62107; 62108. DEPARTMENT OF TRANSPORTATION v. VEST et al.; and vice versa.

Banke, Judge.
The department condemned a small strip of land (.283 acres) on which the condemnees operated an auto body repair business, leaving a remainder of about one-tenth of an acre. The issue of compensation was tried before a jury, and a verdict was returned in the amount of $136,000. The department appeals, contending that the court erred in instructing the jurors that they could consider lost profits as well as any peculiar value the property might have to the condemnees. The condemnees cross appeal, contending that post judgment interest should have been awarded at the rate of 12 percent per annum, whereas the court awarded only 7 percent.

The department's appraiser valued the land at $22,150, the improvements at $22,310, and the damage to the remainder at $7,655. The condemnees called two appraisers, one of whom testified that the total value of the land and improvements, plus consequential

damages, was $89,934, and the other that the total was $88,250. One of the condemnees, Mr. Vest, testified that in his opinion the total value of the property taken, plus consequential damages, was $149,000; however, he was not qualified as an expert and offered no basis whatsoever for this valuation.

Mr. Vest further testified that the taking had destroyed the auto repair business, that he had been unable to find a suitable relocation site, and that consequently he and his co-owners had been forced to discontinue the business. In an effort to prove lost profits, he testified as follows: "Q. And do you know of your own knowledge from your experience and the record and such of your business kept under your supervision what was the amount of the loss? A. The profit for a year gross or net? Q. Well, let's take net. I don't think we ought to take gross. A. If I had to take a figure from my hat, in dollars, I would say $150,000, but I can't tell definitely." This was the only testimony offered on the issue. *Held:*

1. In order to establish lost profits, the jury must be provided with information or data sufficient to enable them to estimate the amount of the loss with reasonable certainty. *Brock v. D.O.T.,* 151 Ga. App. 905, 906 (3) (262 SE2d 156) (1979). Generally speaking, this means that they must be provided with figures establishing the business's projected revenue as well as its projected expenses. See *Kitchens v. Lowe,* 139 Ga. App. 526, 531 (228 SE2d 923) (1976). But see *Bennett v. Smith,* 245 Ga. 725 (267 SE2d 19) (1980). A bold assertion by the owner as to the amount of the lost profits has no evidentiary value unless supported by figures showing the firm's established profits and losses. *Tri-State Systems, Inc. v. Village Outlet Stores,* 135 Ga. App. 81, 84 (2) (217 SE2d 399) (1975). Consequently, the trial court erred in instructing the jury that the condemnees could recover lost profits.

2. There was sufficient evidence to authorize the jury to conclude that the property had a "peculiar value . . . to the owner." As indicated previously, Mr. Vest testified that attempts to find a comparable location had been unsuccessful and that consequently the business had been discontinued. There was also testimony to the effect that the property's location on the highway and the amount of its frontage made it particularly suited for the use to which it was being put. On the basis of this evidence, the jury could have concluded that the fair market value of the property was not adequate compensation. See *Hinson v. D.O.T.,* 135 Ga. App. 258 (1) (217 SE2d 606) (1975); *Housing Auth. of the City of Atlanta v. Troncalli,* 111 Ga. App. 515, 518 (142 SE2d 93) (1965). Thus, had there been evidence establishing the business's expected profits, the jury would have been authorized to award compensation based on the

income valuation method rather than on the basis of fair market value. See *Housing Auth. of the City of Atlanta v. Southern R. Co.,* 245 Ga. 229 (264 SE2d 174) (1980). However, this is not what the court charged. The court instead instructed the jury that the peculiar or unique value of the land to the condemnees was an element to be considered in arriving at value. This in effect authorized a double recovery, i.e., a recovery for loss of the fair market value of the land plus a recovery based on its loss as a business site. This was contrary to law. Where property is valued according to its unique or peculiar value to the owner, this is done as an *alternative* to the fair market value method. "In other words unique property is simply property which must be valued by something other than the fair market value standard." *Housing Auth. of the City of Atlanta v. Southern R. Co.,* supra, at 230. Since in this case there was no competent evidence from which the jury could have valued the property by any standard other than fair market value, the court erred in charging the jury that its peculiar value to the condemnees could be also considered.

3. Although the judgment must be reversed, we agree with the condemnees that post judgment interest in a condemnation action should be awarded at the rate of 12 percent per annum, in accordance with Code Ann. § 57-108 (as amended by Ga. L. 1980, p. 1118). The department contends that the applicable statute is Code Ann. § 95A-616 (Ga. L. 1973, pp. 947, 1021), which provides, in pertinent part, as follows: "After just and adequate compensation has been ascertained and established by judgment, the said judgment shall include, as part of the just and adequate compensation awarded, interest from the date of taking to the date of payment pursuant to final judgment, at the rate of 7 percent per annum on the amount awarded by final judgment . . ." However, since Code Ann. § 57-108, supra, applies by its terms to "[a]ll judgments in this state . . ." and since it is the more recent of the two statutes, we must conclude that it supersedes Code Ann. § 95A-616 insofar as the latter deals with the rate of interest applicable *after* final judgment.

*Judgment reversed. Deen, P. J., concurs. Carley, J., concurs specially.*

DECIDED NOVEMBER 13, 1981.

*Michael J. Bowers, Attorney General, Marion O. Gordon, Senior Assistant Attorney General, William J. Wiggins, Special Assistant Attorney General, Charles Richards, Michael E. Hobbs, Assistant Attorneys General,* for appellant.

*David Flint,* amicus curiae.

*James R. Dollar, Jr.,* for appellees.

CARLEY, Judge, concurring specially.

I agree with the majority that the judgment in this case must be reversed on the main appeal for the reasons set forth in Division 1 of the opinion because the trial judge erred in instructing the jury that the condemnee could recover lost profits. I further agree with the majority in its holding in Division 3 that condemnees' assertion on cross appeal with regard to post-judgment interest is correct. Finally, I agree with the conclusion of the majority in Division 2 that the charge on uniqueness was error. Therefore, I agree with the bottom line of reversal in the case. However, I significantly differ with the majority as to the reasons for reversal based upon the charge of uniqueness and, in my opinion, the underlying rationale for reversal on this issue will be of the utmost significance to the trial judge and the parties upon the retrial of the case.

In order to place in perspective the approach which I feel is mandatory with regard to the charge on uniqueness, it is necessary for me to summarize what I perceive to be the position of the majority in Division 2 of the opinion. Based upon the majority's review of the record, it finds that there was "sufficient evidence to authorize the jury to conclude that the property had a 'peculiar value . . . to the owner' " and that thus "the jury could have concluded that the fair market value of the property was not adequate compensation." Then the majority states that based upon the evidence as to uniqueness, the jury would have been authorized to award compensation on a basis other than that of fair market value. However, the majority feels that in this case the trial court did not give a proper charge on uniqueness because it "instead instructed the jury that the peculiar or unique value of the land to the condemnees was an element to be considered in arriving at value." The majority finds this charge of the trial court to be fatally defective because it "in effect authorized a double recovery." The majority emphasizes that "[w]here property is valued according to its unique or peculiar value to the owner, this is done as an *alternative* to the fair market value method."

I thoroughly agree with the majority's analysis of the treatment to be accorded property which has a unique value to the owner. In a proper case where there is evidence from which a jury could find that the property was unique that jury could determine just and adequate compensation on the basis of actual value as opposed to market value; and when this is done, it definitely is an *alternative* to and not in addition to the fair market value of the property. A clear example of a proper determination of just and adequate compensation of unique property valued "by something other than the fair market value standard" is seen in the Supreme Court decision of *Housing Auth. of the City of Atlanta v. Southern R. Co.,* 245 Ga. 229,

which is cited by the majority. The majority finds error in the charge because "in this case there was no competent evidence from which the jury could have valued the property by any standard other than fair market value . . ." For the reasons which I will set forth hereafter, I could adopt this statement totally if I did so out of context with the remainder of the opinion. However, I cannot agree since it is obvious that this conclusion is based upon the earlier statement of the majority that "[t]hus, had there been evidence establishing the business's expected profits, the jury would have been authorized to award compensation based on the income valuation method rather than on the basis of fair market value." Herein lies the problem with the majority's reasoning. In Division 1 we have held that lost profits were not recoverable in this case because of an evidentiary insufficiency. The fact that lost profits are not recoverable has absolutely nothing to do with the viability of a uniqueness charge or the acceptability of a jury finding of actual value as opposed to market value. It is true that uniqueness is also used to refer to the condition precedent necessary for lost profits determination. See *Dept. of Transp. v. Dixie Bottle Shop,* 245 Ga. 314 (265 SE2d 10) (1980). However, when uniqueness is used in the sense of determining the value of property on other than a fair market value basis, whether lost profits are recoverable or proven is irrelevant.

In this connection, let us examine the portion of the charge relevant to utilization of a value other than fair market value: "While fair market value is ordinarily the same as actual value, there may be circumstances in which it may not be the same, and under those circumstances your measure of damage would be actual value. It is up to you to determine whether such circumstances exist. *I charge you, ladies and gentlemen of the jury, that you are entitled to consider the peculiar value of property to the owner under certain conditions, but before you consider the peculiar value of property to the owner, you must find that the relationship of the owner thereto is peculiar; that its advantages to him are more or less exclusive, and would not be likely to apply to another owner."*

I submit that the problem with the above quoted charge is not, as the majority suggests, that it authorizes double recovery but rather, that the evidence simply did not support the giving of this instruction. In this connection had there been evidence supporting the appellee's contention that the property was "unique," the language of the charge would have been correct. *City of Gainesville v. Chambers,* 118 Ga. App. 25 (162 SE2d 460) (1968); *State Highway Dept. v. Robinson,* 103 Ga. App. 12 (118 SE2d 289) (1961). In fact the charge, as given, is included in the suggested Pattern Jury Instructions prepared by the Council of Superior Court Judges of

Georgia.

However in this case there was absolutely no evidence authorizing an instruction that the standard of evaluation could be other than market value. In fact the appraisers for the condemnee used the market value approach. Furthermore, one of the appraisers for the condemnee stated that there were other auto body repair shops in the same area. Condemnee's other appraiser testified that "*any* location along Fairburn Road would be more valuable . . ." (emphasis supplied) than other locations. The condemnee's property simply was not "unique" in the sense that term is used when referring to "property which must be valued by something other than the fair market value standard." *Housing Auth. of the City of Atlanta v. Southern R. Co.,* supra. "As there was no evidence that fair market value would not give just and adequate compensation to the individual condemnee, the court erred in giving the jury instructions authorizing them to award damages based on the peculiar value of the land to condemnee alone, as distinguished from its market value." *City of Atlanta v. Williams,* 119 Ga. App. 330, 331 (167 SE2d 216). Therefore while I agree with the majority that the challenged instructions were erroneously given, I believe that the error was in giving any instruction on uniqueness.